**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**VANESSA HAYES-WILLIAMS,**

     **Plaintiff,**

     **v.**
                          **Case Number 2:24-cv-3741**
                          **Judge Edmund A. Sargus, Jr.**
                          **Magistrate Judge Kimberly A. Jolson**

**GROVEPORT MADISON LOCAL**
**SCHOOL DISTRICT,**

     **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant Groveport Madison Local School District's Motion for Summary Judgment. (ECF No. 24.) Plaintiff Vanessa Hayes-Williams filed a response in opposition (ECF No. 30), and Groveport filed a reply (ECF No. 31). For the reasons stated below, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**.

## BACKGROUND

Ms. Hayes-Williams is an African American female over the age of 40. (Compl., ECF No. 1, ¶ 8.) She was a substitute teacher employed by Educational Service Center of Central Ohio and assigned to Groveport Madison Local School District ("Groveport"). (Hayes-Williams Dep., ECF No. 24-1, 23:9–17.) Ms. Hayes-Williams is suing Groveport under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and Title 4112 of the Ohio Revised Code. (ECF No. 1.) She alleges that she was treated differently than her Caucasian coworkers under the age of 40; that she was terminated and not selected for permanent positions because of her

gender, race, and age; and that she was retaliated against for reporting disparate treatment. (*Id.* ¶¶ 16, 24, 30, 36, 43, 48.)

## I.     Factual Background

Educational Service Centers ("ESCs") are public education agencies established under the Ohio Revised Code to provide educational and support services to local school districts. (Grube Aff., ECF No. 24-2, Ex. A-1, PageID 288.) *See* Ohio Rev. Code § 3312.01(C). Groveport contracts with ESC for various services, including substitute teaching services. (*See, e.g.*, Grube Aff., Exs. A-1, A-2, PageID 285–90.) Ms. Hayes-Williams began working as a substitute teacher through ESC in 2022 at Groveport Madison Middle School South. (Hayes-Williams Dep., 24:18–20.)

Ms. Hayes-Williams has a bachelor's degree in liberal arts from Indiana University and a master's degree in public management administration from Indiana Wesleyan University. (*Id.* 15:8–24.) At all times relevant to this lawsuit, she maintained a valid Ohio substitute teaching license. (Grube Aff., Ex. A-3, PageID 292–93.) After her time at Groveport, Ms. Hayes-Williams received an Alternative Administrative Principal License that was effective starting July 2023 and expired in June 2025. (*Id.* PageID 291–92.)

During the 2022–2023 academic year, Ms. Hayes-Williams was assigned to Groveport Madison High School as a "building substitute," meaning she reported to the same school every day. (Hayes-Williams Dep., 46:18–23; 51:16–21; Bland Dep., ECF No. 24-5, 25:5–13.) Additionally, she was directly employed by Groveport for two limited assignments: (1) as a summer school teacher in the summer of 2022 and (2) as an assistant volleyball coach in the fall of 2022. (Hayes-Williams Dep., 23:23–24:3; Ex., PageID 165; Ex., PageID 172.)

Ms. Hayes-Williams's Complaint alleges six incidents that form the basis of her disparate treatment claims:

1. She was denied the opportunity to be a test administrator for state testing although she served as a test administrator while employed as a substitute teacher in prior years;

2. She was sent home for violating a schoolwide "stay put" directive;

3. She was not given access to enter grades although other teachers had access;

4. She was not compensated for acting as an advisor for the school's Black History Month production while a Caucasian teacher was paid for his work on the same production;

5. She was not compensated for grading, while other teachers were compensated for grading; and

6. She volunteered to act as advisor for multiple student activities, such as "Fairy Godmother," but was denied.

(Compl., ¶ 16.) Ms. Hayes-Williams also alleges that she applied for three permanent positions at Groveport, "Business CTE, Summer Coordinator, and Assistant Principal," but Groveport hired Caucasians who were under the age of 40 to fill those roles. (*Id.* ¶ 19.) Ms. Hayes-Williams also alleges that she experienced issues with the head volleyball coach, a Caucasian female under the age of 40. (*Id.* ¶¶ 17–18.) Lastly, she alleges that she was "terminated" from Groveport due to her sex, race, and age and as retaliation for reporting disparate treatment. (*Id.* ¶¶ 24, 30, 36, 43, 48.)

On summary judgment, the Parties discuss only three of the above incidents: the volleyball situation, the Black History Month production, and the stay-put order. The Court provides a summary of the three incidents.

First, the volleyball situation: Ms. Hayes-Williams states that the head volleyball coach, Bailey Church, intentionally excluded Ms. Hayes-Williams from participating as a coach. (Opp., ECF No. 30, PageID 419.) Ms. Hayes-Williams testified in her deposition that Ms. Church acted in a "derogatory" manner towards Ms. Hayes-Williams on several occasions. (Hayes-Williams

Dep., 76:16–17.) According to Ms. Hayes-Williams, Ms. Church called her a "backstabber" in front of students and staff members (*id.* 76:3–14); intentionally failed to introduce Ms. Hayes-Williams at a parent meeting but introduced two other coaches (*id.* 77:20–78:5); and, with another staff member, mocked Ms. Hayes-Williams's education and work experience (*id.* 79:14–19; 80:22–81:9). Ms. Hayes-Williams also testified that Ms. Church excluded Ms. Hayes-Williams from participating in making decisions and eventually relieved Ms. Hayes-Williams of her coaching duties. (*Id.* 83:12–15; 84:13–24.) Ms. Hayes-Williams reported the situation to the interim principal, Duane Bland, and asked for her limited-assignment contract to be terminated. (*Id.* Ex., PageID 166.) Groveport asserts that even though Ms. Hayes-Williams stopped participating in volleyball activities "long before the season ended," she was still paid the full $3,528 set forth in her limited-assignment contract. (Mot., PageID 67 (citing Grube Aff., PageID 282); Hayes-Williams Dep., 111:2–13.)

Second, Ms. Hayes-Williams contends that she experienced racial discrimination while directing the school's Black History Month production. (Opp., PageID 419–20.) Ms. Hayes-Williams states that she applied to be a member of the school's Culture and Diversity Committee but was denied in favor of three Caucasian applicants. (*Id.*; *see also* Hayes-Williams Dep., 68:21–69:17.) Despite not being on the Committee, Ms. Hayes-Williams agreed to direct the school's Black History Month program after students asked her to serve as the advisor. (*Id.* 70:1–20.)

According to Ms. Hayes-Williams, both she and the students involved in the production experienced hostility from staff members during preparations for the event. Ms. Hayes-Williams testified that one staff member refused to allow the group to rehearse on the theater stage during their scheduled rehearsal time (*id.* 118:11–16); another staff member locked her classroom door

4

so the students could not change into costumes in that classroom and accused the students of taking candy from her desk (*id.* 117:21–24); and the choir teacher asked the students why they were participating "in that Black production" instead of another production going on at the time. (*id.* 118:18–21).

Despite these incidents, both Parties agree that the production was a success, and Mr. Hayes-Williams and the students were commended for their work in the school's newsletter. (*Id.* 70:21–23; Ex., PageID 174.) Additionally, Ms. Hayes-Williams asserts that she was not paid for her work on the program but another ESC employee, Brandon Lively, who did the audiovisual work on the show, was paid. (*Id.* 71:3–20.)

Third is the stay-put incident that resulted in Ms. Hayes-Williams being sent home early. On April 28, 2023, the vice principal informed school staff that no hall passes were to be issued that day due to "lack of security team members in the building and teacher absences" unless there was an emergency. (Hayes-Williams Dep., Ex., PageID 176.) Later that day, when a student had a medical emergency, the school was placed on a stay-put order, which means everybody must stay in the classrooms until further notice. (Smathers Dep., ECF No. 24-3, 46:23–47:15.)

Julia Barnhouse, one of the assistant principals, was monitoring the hallways during the stay-put and encountered a student in the hall. (Barnhouse Dep., ECF No. 24-4, 8:5–10; 32:8–12.) Ms. Barnhouse asked what the student was doing in the hall and the student responded that Ms. Hayes-Williams told the student to come to her classroom and showed Ms. Barnhouse a text message from Ms. Hayes-Williams. (*Id.* 32:11–33:9.) The student became argumentative when Ms. Barnhouse told her to go back to class. (*Id.*) Ms. Hayes-Williams testified that she heard the argument and opened her classroom door to intervene and calm the student down. (Hayes-

5

Williams Dep., 127:5–23.) After the student left, Ms. Barnhouse asked to speak with Ms. Hayes-Williams but according to Ms. Barnhouse, Ms. Hayes-Williams refused to speak with her. (Barnhouse Dep., PageID 34:17–35:8.) Later that day, Ms. Hayes-Williams's was sent home early for violating the stay-put directive. (Hayes-Williams Dep., 129:24–130:2; 143:16–17; Bland Dep., 17:17–21.) Ms. Hayes-Williams was paid through the rest of the academic year but did not return to work after the incident. (*Id.* 144:5–7; Smathers Dep., 39:10–12.)

In August 2023, at the beginning of the 2023–2024 academic year, Ms. Hayes-Williams received an email from human resources informing her that she "will not be on the building substitute teacher list this year or returning to the high school as a building substitute teacher" because the school "decided to move in a different direction with this position." (Hayes-Williams Dep., Ex., PageID 161.) Groveport asserts it did not welcome back Ms. Hayes-Williams because she violated the stay-put order, had "difficulty getting along with administrators and teachers," and "overstepped her role as a substitute teacher." (ECF No. 31, PageID 430; Smathers Dep., 12:16–20; 36:19–37:4.)

## II.      Procedural Background

In July 2023, Ms. Hayes-Williams filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC"). (Hayes-Williams Dep., Ex., PageID 228–29.) No EEOC action was taken, and the EEOC issued Ms. Hayes-Williams a right-to-sue letter on her Title VII claims. (ECF No. 1-1, PageID 12.) The EEOC also informed Ms. Hayes-Williams that a right-to-sue letter is not required for claims under the ADEA. (*Id.* PageID 10.)

In July 2024, Ms. Hayes-Williams sued Groveport alleging the following: (1) sex discrimination under Title VII and Ohio Revised Code Title 4112; (2) race discrimination under Title VII and Ohio Revised Code Title 4112; (3) age discrimination under the ADEA and Ohio

Revised Code Title 4112; (4) retaliation under Title VII and Ohio Revised Code Title 4112; and (5) retaliation under the ADEA and Ohio Revised Code Title 4112. (ECF No. 1.)

**LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of showing that the non-moving party lacks evidence to support an essential element of its claim. *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 716–17 (6th Cir. 2012); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the court must view the factual evidence in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

A genuine issue of material fact exists if the non-moving party can present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 851 (6th Cir. 2017) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993)). In other words, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frenchko v. Monroe*, 160 F.4th 784, 795 (6th Cir. 2025) (quoting *Liberty Lobby*, 477 U.S. at 248); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

## ANALYSIS

### I.      Sex, Race, and Age Discrimination

Discrimination claims relying on indirect evidence of discrimination under Title VII and the ADEA are analyzed under the *McDonnell Douglas* burden-shifting framework. *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)); *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 807 (6th Cir. 2020). Claims brought under Title 4112 of the Ohio Revised Code are evaluated under the same standard. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

Under the burden-shifting framework, a plaintiff must first establish a prima *facie case* of discrimination by showing that he or she (1) was a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment decision; and (4) was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. *Redlin*, 921 F.3d at 606–07 (6th Cir. 2019); *Willard*, 952 F.3d at 808.

Groveport argues that Ms. Hayes-Williams cannot establish a *prima facie* case of discrimination because she (1) was not qualified for the positions she applied for, (2) did not suffer an adverse employment action, and (3) was not treated differently than a similarly situated non-protected employees. (Mot., ECF No. 24, PageID 70–78.)

Ms. Hayes-Williams does not address Groveport's arguments against her discrimination claims, thereby abandoning those claims. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.") (collecting cases). But on summary judgment, the Court's analysis does not end there. The Court must review the portions of the record submitted by Groveport to determine whether Groveport carried its burden to show

8

that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Evans v. Plummer*, 687 F. App'x 434, 446 (6th Cir. 2017) ("[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded.") (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)).

Groveport asserts that Ms. Hayes-Williams was not qualified for a full-time teacher or principal position because she did not have a teacher's or principal's license. (Mot., PageID 72–73; *see* Grube Aff., Ex. A-3, PageID 291–96.) As for the Culture and Diversity Committee position, Groveport asserts that Ohio law requires it to give qualified district employees the opportunity to fill such positions before offering it to non-district employees, which is why Ms. Hayes-Williams did not get the position. (ECF No. 31, PageID 432 (citing Ohio Rev. Code § 3313.53(D)(1).)

Groveport also argues that Ms. Hayes-Williams did not suffer an adverse employment action. (Mot., PageID 70–71.) An adverse employment action is a "materially adverse change in the terms and conditions of a plaintiff's employment." *White v. Burlington N. & Sante Fe Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004) (en banc) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). An "employment action is adverse if it leaves the employee 'worse off respecting employment terms or conditions.'" *McNeal v. City of Blue Ash*, 117 F.4th 887, 900 (6th Cir. 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)).

Groveport identifies two events that it argues are not adverse employment actions: the volleyball situation and it not welcoming Ms. Hayes-Williams back for the 2023–2024 academic year. Regarding the volleyball situation, Groveport emphasizes that the head volleyball coach had no authority to dismiss Ms. Hayes-Wiliams, and further, Ms. Hayes-Williams was still paid the full amount of the contract even though she stopped performing the duties of the role. (Mot.,

9

PageID 71.) For the second event, Groveport argues that Ms. Hayes-Williams was not guaranteed an ongoing assignment with Groveport, and it exercised its discretion to not welcome her back after it evaluated her performance and found it lacking. (*Id.*)

Groveport next argues that Ms. Hayes-Williams cannot establish that she was treated differently than similarly situated non-protected employees because the people she compares herself to were qualified for the positions they received and she lacked the requisite qualifications. (Mot., PageID 74–75.) For example, the applicant who received the Assistant Principal position had a traditional principal's license, while Ms. Hayes-Williams did not. (*Id.* PageID 75; Grube Aff., PageID 282–83.) As for Ms. Hayes-Williams's allegation that she was not paid for working on the Black History Month production, but Mr. Lively was, Groveport states that Mr. Lively was paid because he had a limited-assignment contract as the school's auditorium manager for the 2022–2023 academic year and his work on the program fell under the duties of his contract. (Mot., PageID 76; Grube Aff., Ex. A-5, PageID 299.)

Considering the evidence presented by Groveport and unrebutted by Ms. Hayes-Williams, the Court finds that Ms. Hayes-Williams cannot establish a *prima facie* claim of discrimination based on sex, race, or age. Accordingly, Groveport's Motion on the discrimination claims is **GRANTED**.

## II.    Retaliation

Claims of retaliation under Title VII, the ADEA, and Title 4112 of the Ohio Revised Code based on indirect evidence, like discrimination claims, are governed by the *McDonnell Douglas* burden-shifting framework. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007); *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007). A plaintiff must first establish a *prima facie* case of retaliation

by showing (1) she engaged in a protected activity; (2) the defendant knew that she exercised her protected rights; (3) an adverse employment action was subsequently taken against her; and (4) her protected activity was the but-for cause of the adverse employment action. *Kenney*, 965 F.3d at 448 (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730–31 (6th Cir. 2014)).

If a plaintiff establishes a *prima facie* case, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792–93 (6th Cir. 2000) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer satisfies its burden, the burden shifts back to the plaintiff to demonstrate "that the proffered reason was not the true reason for the employment decision." *Id.* (quoting *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990)).

Ms. Hayes-Williams contends that Groveport retaliated against her by terminating her as a building substitute for reporting unequal and discriminatory treatment. (Opp., PageID 415.) She asserts that she engaged in protected activity by making complaints of discriminatory behavior on three occasions: a report about the volleyball situation and about the Black History Month production, as well as a "report to Groveport Madison School District."[1] (*Id.* PageID 425.) Ms. Hayes-Williams appears to attribute all three complaints to her "termination" from the school. (*Id.* PageID 425–26.) Ms. Hayes-Williams contends that Groveport began gathering

---

[1] Ms. Hayes-Williams does not provide the complaints to the Court, cite to them in the record, or specify their substance. Nor does she provide the dates of her complaints, which is relevant to the Court's analysis. Regarding the report to the district office, she states she "reported the [volleyball and Black History Month production] incidents along with her removal from the school on April 23, 2023 [sic] to the District Offices." (ECF No. 30, PageID 420.) Groveport appears to concede that Ms. Hayes-Williams lodged complaints in August 2022, February 2023, and April 2023. (ECF No. 31, PageID 434.) Accordingly, the Court will consider those months to be the relevant periods that Ms. Hayes-Williams engaged in protected activity.

documentation to terminate her after her complaint to the district office. (Opp, PageID 420–22, 425–26.) As support, she cites the following deposition testimony from Ms. Barnhouse:

Q:     What was the purpose in preparing this email, Miss Barnhouse?

A:     After the stay put incident, I was told that Mrs. Hayes-Williams had gone and made a complaint over at district, and I was asked to collect documentation.

. . .

Q:     Sure. I guess I'm just trying to understand kind of what the scope of what you were asked to find information out about was, what that scope was?

A:     I think they were trying to provide documentation, and if they did not want to have her back in the building as a substitute.

(Barnhouse Dep., 27:3–8; 61:19–62:1.)

Groveport does not appear to dispute that Ms. Hayes-Williams's complaints constitute protected activity. (*See* ECF No. 31.) Instead, Groveport argues that it did not take an adverse employment action against Ms. Hayes-Williams because she was not a Groveport employee and it did not terminate her. (*Id.* PageID 433.) It also disputes the temporal proximity and causal connection between her protected activity and any alleged retaliation. (*Id.* PageID 437.) Further, it asserts that it had a legitimate nondiscriminatory reason for its actions. (*Id.* PageID 438.)

### A. *Prima Facie* Case of Retaliation

The Court starts with the threshold matter of whether Ms. Hayes-Williams was an employee of Groveport. "The determination of whether a plaintiff qualifies as an employee . . . is a mixed question of law and fact that a judge normally can make as a matter of law." *Weary v. Cochran*, 377 F.3d 522, 524 (6th Cir. 2004) (citation modified). "Under the joint employer doctrine,[2] 'an entity that is not the plaintiff's formal employer may be treated . . . as if it were the

---

[2] Although neither Party frames their arguments within the joint employer doctrine, the Court finds it is the appropriate framework based on the circumstances of this case.

employer for purposes of employment laws.'" *Parks v. Lyash*, No. 22-5841, 2023 WL 6237062, at \*5 (6th Cir. Apr. 12, 2023) (quoting *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011)). "In determining whether an entity is the plaintiff's joint employer, the major factors include the 'entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance.'" *Nethery v. Quality Care Invs., L.P.*, 814 F. App'x 97, 103 (6th Cir. 2020) (quoting *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013)).

Ms. Hayes-Williams was placed at Groveport after applying to ESC and then undergoing a "review" with Groveport. (Hayes-Williams Dep., 39:11–22.) As a building substitute, Ms. Hayes-Williams reported to the same Groveport school every day. (*Id.* 51:16–21.) According to the ESC handbook, Ms. Hayes-Williams had to follow Groveport's rules, policies, and procedures (*id.* 38:20–39:2; Ex., PageID 187–88) and she attended meetings and trainings at Groveport (*id.* 39:2–3). Ms. Hayes-Williams reported her hours to Groveport but her paychecks and W-2 were issued by ESC. (*Id.* 41:6–9; Ex., PageID 156.) Although the Parties dispute whether Ms. Hayes-Williams was "terminated," there is no dispute that Groveport had the authority to evaluate Ms. Hayes-Williams and determine whether it wanted her to continue working at its schools. (Mot., PageID 65; ECF No. 31, PageID 433.) Viewed in a light most favorable to Ms. Hayes-Williams, the evidence is sufficient to establish that Groveport acted as Ms. Hayes's joint employer for purposes of employment discrimination laws.

Next, Groveport argues that it did not take an adverse employment action against Ms. Hayes-Williams because it did not terminate her since she "remained eligible to serve as a substitute for other school districts" through ESC. (ECF No. 31, PageID 431, 433.) In a retaliation context, an adverse employment action is an action that a reasonable employee would

have found to be materially adverse, meaning it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Laster*, 746 F.3d 714, 719 (6th Cir. 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Because the Court has determined that Groveport acted as a joint employer of Ms. Hayes-Williams, its decision to "terminate" her placement at the high school constitutes an adverse action that affected her employment at Groveport, regardless of how it affected her employment with ESC, and would have dissuaded a reasonable employee from making a complaint. *See E.E.O.C. v. Skanska USA Bldg., Inc.*, 80 F. Supp. 3d 766, 775 (W.D. Tenn. 2015) (finding that a joint employer took an adverse employment action against an employee by permanently removing the employee from the worksite). Thus, Groveport took an adverse employment action against Ms. Hayes-Williams.

Next, Groveport argues that Ms. Hayes-Williams fails to establish a causal connection between her protected activity and the adverse employment action. (ECF No. 31, PageID 437.) It emphasizes that it took no adverse action against Ms. Hayes-Williams after her August 2022 and February 2023 complaints. (*Id.*) As for the April 2023 complaint, it contends that the temporal proximity is not enough and Ms. Hayes-Williams fails to couple temporal proximity with other evidence of retaliatory conduct. (*Id.*)

To establish a causal connection, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in the protected activity. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). One way a plaintiff can establish a causal connection by showing a "very close temporal proximity" between the adverse employment action and the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the

employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 399–400 (6th Cir. 2014).

Ms. Hayes-Williams argues that temporal proximity alone is sufficient here. (Opp., PageID 425–26.) She incorrectly asserts that her termination was "just weeks" after her protected activity. (*Id.* PageID 426.) Rather, her last complaint was in April 2023[3] and her termination from Groveport was on August 8, 2023. (Hayes-Williams Dep., Ex., PageID 161.) The Court finds that an approximately three-and-a-half-month period between the protected activity and adverse employment action is not "very close" and thus, insufficient to establish a causal connection in this case without other evidence of retaliatory conduct. *See Basch v. Knoll, Inc.*, 619 Fed. App'x 457, 461 (6th Cir. 2015) (finding a three-month period to be insufficient to establish a causal connection absent other evidence of retaliation); *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) (finding a two-and-a-half month period, standing alone, to be insufficient); *see also Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435–36 (6th Cir. 2009) (finding that a three-month period plus heightened scrutiny were sufficient to establish causation).

Ms. Hayes-Williams argues that Ms. Barnhouse's deposition statements establish that Groveport gathered documentation after her complaint to retaliate against her. (*See* Opp., PageID 420–22, 425–26.) The Court is not convinced. First, Ms. Barnhouse's stated that she *thought* the reason for gathering documentation was to determine whether Groveport wanted Ms. Hayes-Williams to return. Without further testimony of Ms. Barnhouse's actual knowledge on the matter, her testimony is too speculative to establish evidence of retaliation. *See Jennings v. Cty. of Monroe*, 630 F. App'x 547, 555 (6th Cir. 2015) ("A party cannot defeat summary judgment with conclusory allegations, speculation, and unsubstantiated assertions." (citation

---

[3] *See supra* note 2.

modified)). Second, Groveport may have gathered documents and conducted an investigation for a number of reasons, including to investigate the allegations in Ms. Hayes-Williams's complaint, as is standard practice after such a complaint is made.

Accordingly, because the temporal proximity alone is insufficient here, and Ms. Hayes-Williams presents no other evidence of retaliatory conduct, Ms. Hayes-Williams fails to establish a *prima facie* case of retaliation.

### B. Legitimate, Nondiscriminatory Reasons and Pretext

Even if Ms. Hayes-Williams could establish a prima *facie case* of retaliation, she cannot overcome Groveport's legitimate, nondiscriminatory reason for terminating her.

Groveport asserts that Ms. Hayes-Williams had "issues with interpersonal relationships, communication, collaboration, and getting along with other staff members" during her time at its schools. (*Id.* PageID 76–77 (citing Smathers Dep., 34:18–21; 36:19–24; 37:1–9; 37:16–23).) Groveport states that it tolerated Ms. Hayes-Williams's interpersonal conflicts but ultimately chose not to welcome her back after she violated a school safety protocol by asking a student to come to her classroom during the stay-put directive. (ECF No. 31, PageID 430–31, 434, 435–36.) These are legitimate, nondiscriminatory reasons for terminating an employee. *See Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 252 (6th Cir. 2023) (finding interpersonal conflicts and failure to follow policies to be legitimate nondiscriminatory reasons for asking an employee to resign); *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015) (stating that insubordination and unprofessional behavior are legitimate, nondiscriminatory reasons for terminating an employee). The burden thus shifts to Ms. Hayes-Williams to show pretext.

"To establish pretext, the employee must show 'that the employer's proferred reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to

16

warrant the action.'" *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 569 (6th Cir. 2023) (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)).

Ms. Hayes-Williams asserts that the incidents of her inability to get along with others "all stemmed from incidents where she complained of disparate treatment." (Opp., PageID 426.) But she says nothing about Groveport's ultimate reason for terminating her—the stay-put incident. (*See id.*) As a result, she fails to establish pretext by showing that Groveport's stated reason for the termination, her violating a school policy, had no basis in fact, did not actually motivate the action, or was insufficient to warrant termination.

Because Ms. Hayes-Williams cannot establish a *prima facie* case of retaliation, and further cannot establish pretext, Groveport's Motion on her retaliation claims is **GRANTED**.

## CONCLUSION

For the reasons stated above, (ECF No. 24) Defendant Groveport Madison Local School District's Motion for Summary Judgment is **GRANTED**. Accordingly, the settlement conference, trial date, and corresponding deadlines in this case are **VACATED**. (ECF No. 32.)

The Clerk is **DIRECTED** to enter judgment and terminate this case.

**IT IS SO ORDERED.**

5/26/2026                                         s/Edmund A. Sargus, Jr.
**DATE**                                         **EDMUND A. SARGUS, JR.**
                                                 **UNITED STATES DISTRICT JUDGE**

17